## T. H. B. PATTERSON v. MARINE N. BANK.
## T. H. B. PATTERSON v. MARINE N. BANK.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON
PLEAS NO 2 OF ALLEGHENY COUNTY.

Argued October 31, 1889—Decided November 11, 1889.
[To be reported.]

1. When one deposits money in a bank, upon an account opened in his name as agent, without anything on the face of the deposit account to show for whom he is agent, the money as between the bank and the depositor belongs to the latter: Citizens N. Bank v. Alexander, 120 Pa. 476.

2. A bank paying over money, so deposited, to a third person, does so at its peril, and it must assume the burden of proof to show, not only that the money did not belong to the depositor, but that it did belong to the person to whom it was paid.

3. When a bank, without legal cause, refuses to honor a check drawn upon it by a depositor, something more than a mere breach of contract is involved, and it is liable to the depositor for substantial damages, though no special pecuniary loss be shown: Eckel v. Murphey, 15 Pa. 488, distinguished.

4. The refusal of a trial court to give to the counsel for the defendant, instead of to the counsel for the plaintiff, the conclusion of the argument to the jury, is within the discretion of the court and is not reviewable by the Supreme Court.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 148, 149 October Term 1889, Sup. Ct.; court below, Nos. 508, 509 January Term 1888, C. P. No. 2.

On December 31, 1887, to No. 508 January Term 1888, in the court below, T. H. Baird Patterson brought assumpsit against the Marine National Bank of Pittsburgh, to recover a balance alleged to be due to the plaintiff upon a deposit account opened by him with the defendant bank. Issue. On the same day, to No. 509 of the same term, an action in case, between the same plaintiff and defendant, was brought to recover damages for a refusal by said bank to honor a check drawn by the plaintiff upon his said account. Issue.

The two cases were tried together on February 11, 1889, when the following facts were shown :

In July, 1886, the plaintiff opened with the defendant bank an account in the name of "T. H. Baird Patterson, Agent," and between that time and October 5, 1887, made various deposits of money upon that account, and drew various checks against the same. The plaintiff's pass-book was balanced by the bank on or about October 5, 1887, and then returned to him. The result of the balancing was, that on the date last named there appeared to be due, upon the face of the account, to T. H. Baird Patterson, agent, the sum of $1,315.53. No further deposits were made and no further checks were drawn, until December 29, 1887, when the plaintiff drew a check on the defendant bank, signed by himself as agent, to the order of George P. Hamilton, for the amount of said balance. On presentation, payment of this check was refused.

At the time of opening the account, the plaintiff represented in different capacities the estate of Joseph Patterson, deceased, having charge of certain real property in the city of Pittsburgh as agent for the heirs of said decedent, and having charge of certain other like property, belonging to said estate, as a trustee under appointment of the Orphans' Court of Allegheny county. In the year 1887, the plaintiff resigned his trusteeship, and the Fidelity Title & Trust Company of Pittsburgh was appointed his successor therein. Of this company, George P. Hamilton was the trust officer. The check given to Mr. Hamilton by the plaintiff was drawn for the purpose of making payment to the trust company of a part of a balance ascertained by a decree of the Orphans' Court to be in the hands of the plaintiff as trustee, and payable to his successor in the trust.

The defendant put in evidence testimony tending to show that the account in question was opened by the plaintiff in pursuance of an arrangement between him and the Patterson heirs, in which it was agreed that it should be confined to moneys connected with the agency business, in which the plaintiff represented said heirs, as distinct from and exclusive of the business relating to his trusteeship in the Orphans' Court, and that W. C. Macrum, the cashier of the defendant bank, should act with the plaintiff as advisory agent in the matter ; that in the spring of 1887 the plaintiff was removed by his

principals from said agency, and W. C. Macrum appointed in his stead.

Peter Boyd testified for the defendant that he represented the plaintiff's principals in connection with the agency business, and as their representative endeavored to get an account from the plaintiff; that in July, August or September, 1887, the plaintiff furnished a statement headed: "Statement of cash received and paid out by T. H. Baird Patterson, agent for Thos. N. Patterson, Joseph N. Patterson, E. H. Hazeltine, and the Schenley leasehold. Account of property not connected with the Patterson Block;" that on comparing the footings of the debit and credit sides, this account showed a balance in Mr. Patterson's hands of over $2,000, if all the credits were admitted, but that the account was not yet vouched; that the agent's commissions were not charged in this statment, and if placed there, they would reduce the balance owing, according to the account, to about $1,600; that at the end of the account the plaintiff added a memorandum that this statement was made without prejudice to the accounts as they then existed.

W. C. Macrum testified that in his capacity of advisory agent he became acquainted with the properties in charge of the plaintiff, and learned who the tenants thereof were; that the plaintiff made out and left at the bank, deposit slips showing the sources of most of the funds deposited on this account, and from these slips the witness learned that a great many of the sums deposited were rents received from tenants of the agency properties; that on May 27, 1887, a paper addressed to the witness as cashier and signed by Peter Boyd as attorney for the plaintiff's principals, was served upon the witness, and by it notice was given not to honor any checks upon the account of T. H. Baird Patterson, agent, without the approval of Mr. Boyd, the plaintiff having been removed from his agency; that subsequently the bank paid over to the Patterson heirs the balance on deposit in said account, receiving from them a bond of indemnity therefor; that when the check in question was presented by Mr. Hamilton, the witness told him that the bank had received a bond from the Patterson heirs, and had paid the money over to them. On cross-examination the witness identified a number of the deposits made by the plaintiff in his agency account as being shown by the deposit slips to have

Statement of Facts.

come from other sources than the agency business, and specified some of these as belonging to the trustee business.

The plaintiff being called in rebuttal upon his own behalf, his counsel proposed to prove by the witness the exact sources of all the moneys entering into the said account; this to be followed by evidence showing that all of the money derived from the alleged agency, entering into the said account, had been exhausted by proper charges against the same.

Objected to, because not rebuttal and because irrelevant and incompetent.

By the court: Objection overruled; exception.[8]

The witness then testified in detail respecting the source of each item of money deposited by him, stating that a part of the deposits were agency money, a part were moneys belonging to his trusteeship, and a part were his own private funds; he also gave the purpose for which each of the checks upon the account was drawn, and the application made of the money thus checked out, his testimony tending to show that all the agency moneys embraced in the account had been checked out for agency purposes, prior to the drawing of the check to Mr. Hamilton. The plaintiff, testifying further, denied that he had been removed from the agency; asserted that he had resigned therefrom, and admitted that he had ceased to act as agent about April 1, 1887; denied that the account had been opened in pursuance of any agreement with his principals, or for the exclusive purpose of keeping in it the moneys collected by him under his agency for the Patterson heirs; alleged that it was opened, like similar accounts in other banks, in order that, in case of any trouble, he might have enough money showing prima facie on the face of the deposit that it was for other people. He also testified that at the time of drawing the check in favor of Mr. Hamilton, he had no knowledge of the notice not to honor his checks, given to the bank. Being asked upon cross-examination how he came to make out the statement testified to by Mr. Boyd, showing that about $2,000 was due to his principals out of agency funds, the plaintiff answered: "It does not show that, but I expressly state in that, that this statement is made without prejudice to accountant's legal rights as they may be found to exist, subject to any corrections upon settlement of his accounts. At the time I made you that statement, it was simply

to satisfy you of the approximate amount that I had collected and disbursed."

At the conclusion of the testimony, the defendant's counsel asked permission of the court to close the case to the jury:

By the court: Permission refused; exception.[6]

The court, WHITE, J., charged the jury, in part, as follows:

These actions are based upon a balance that appeared to be due to T. H. Baird Patterson, agent, in the Marine National Bank. According to the bank book, the account began in July, 1886, and continued until October, at least, of 1887. On the face of the book there would appear to be a balance due T. H. Baird Patterson, as agent, October 5, 1887, of $1,315.53. On December 29, 1887, he drew a check on the bank for that amount, to the order of Mr. Geo. P. Hamilton; that check was refused. He then brought suit, first to recover the balance due on this book, $1,315.53; and the second suit is to recover damages for the failure of the bank to honor his check. Upon the face of this bank book he would be entitled to recover. If there was nothing else in the case than simply this book, the plaintiff would be entitled to recover in both actions. But the defendant defends on the ground that the money belongs to the Patterson heirs, of whom the plaintiff was agent; that these deposits were made in that bank by him as agent for the Patterson heirs, under an arrangement with those heirs, that the account should be kept in this way in this bank, and that at the time he drew that check he had ceased to be the agent of the Patterson heirs; that the money belonged to the heirs and not to him, and that the bank had, under notice from the heirs, paid over the money to those heirs.

[Now the question really is, and that is a question for the jury, did this money belong to the Patterson heirs? Were these deposits and this account kept in the Marine National Bank as the agent of these Patterson heirs, and in pursuance of an arrangement with them to that effect? And if the jury find that such was the arrangement and such was the fact, and that he had ceased to be their agent, when he drew that check, and had not settled with his principals, then I say to you the plaintiff cannot recover in either action; and if there was no

Charge of Court below.

such arrangement between him and the Patterson heirs, then the plaintiff can and is entitled to recover in both actions.] [4]

[Now, gentlemen, was there any such arrangement as that suggested? I may say here, that while these actions are against the Marine National Bank, yet the substantial parties to the action are the plaintiff here and the Patterson heirs. The Marine National Bank was the depository of this money and the bank did not pay it over to the Patterson heirs without getting protection. They received a bond of indemnity from the Patterson heirs, and of course those heirs must stand back of the bank, and the bank cannot defend except on the ground that the Patterson heirs were entitled to this money;] [5] that it was their money. I may make this remark further: that the bank could not defend simply on the ground that the plaintiff was the agent of the Patterson heirs, and that he owed them an unsettled account; neither could the plaintiff defend against the claim of the Patterson heirs, on the ground that he had other claims against these heirs. If this was the money of the heirs, deposited in the bank in pursuance of an arrangement between him and the Patterson heirs, then they are entitled to the money, unless he can show that he settled with them and that they are not entitled to it.

He cannot say that they owe me for something else, and therefore they are not entitled to this money, if it was deposited there as their money; neither can they claim it if he had settled with them entirely his agency account. But there has been no settlement according to the evidence in this case, between him and his principals. The question then is, and I repeat it, so that you may not misunderstand the issue, Was this money deposited in that bank in pursuance of an arrangement between Mr. Patterson and the Patterson heirs, that the account should be kept in the bank in that form? If such was the arrangement and the deposit made in pursuance of it, then the plaintiff cannot recover in either of these actions. . . .

You have to look at all the evidence in the case that will throw any light upon the question you are to pass upon, whether this was the arrangement between the Patterson heirs and Mr. Patterson. Now, in the first place as bearing upon it, is the fact that this bank book is to T. H. B. Patterson, agent; that implies that it is not his own money that he deposits.

The implication from the book itself is, that this money which he received as agent was for some other person or persons. It does not necessarily imply that he was the agent of the Patterson heirs at all; it does not say who he was agent for, but the fair implication is, that it was not his personal account. If there was such an arrangement and Mr. Patterson opened this account as agent for them, it would be his duty to keep it as agent for them; to deposit no moneys on this account except what was the money of the principals, or on his account as agent for them. If he opened this account as agent, in pursuance of such an arrangement as the Patterson heirs allege, I repeat that it was his duty to keep it exclusively as that account, and not to mix with it either his own personal money, or money as trustee under the Orphans' Court appointment; and the presumption would be, if it was opened in that way, that all of this money belonged to his principals; that is, that it was an account of his agency. . . . .

A great deal of testimony was introduced to show that a great many of these deposits were not on account of the agency. That would be of some importance, if there was no arrangement of the kind I have mentioned, between plaintiff and the heirs, but if there was such an arrangement the presumption is that all of this money was put there at the time of the deposits, as for the Patterson heirs. Mr. Patterson mixed with it, according to his own testimony, some of his own money and some of the money of the trustee account. If there was such an arrangement, that mixture was improper; he ought not to have mixed up his own money or any other money with this. Bearing on this, I do not know that Mr. Patterson says that all the money he received as agent was deposited in this bank; probably some of it was used for other purposes, or deposited elsewhere. . . . .

Sometime during the summer of 1887, after the plaintiff had ceased to be agent, he made out a statement that is put in evidence here, although not purporting to be a final statement, or settlement, of his account as agent; and, according to the figures there given, there would seem to be in his hands in the neighborhood of $2,000 as agent, not deducting from it what would be his commissions, and, of course, the account open to any proper corrections or omissions in the way of a final settle

ment of the account. Allowing his commissions on that amount, there would be still due to these heirs a considerable sum, perhaps equal to, or greater, than the amount in bank. But that settlement of Mr. Patterson is not conclusive against him. In a final settlement he can make any additional charges that would be proper; but in the absence of any such statement, this is some evidence to go to the jury. However, as I have said, the Patterson heirs could not claim this money simply because the plaintiff owed them as agent; it is only on the ground that the money was deposited in pursuance of the arrangement I have stated, to be kept there as an agency account, and if so deposited, and he ceased to be their agent long before he drew this check, and the check was not drawn on account of his agency at all, then I say the Patterson heirs could claim the fund, unless Mr. Patterson could show that he had settled with them, and that it was not coming to them.

In that aspect of the case I do not think it is material whether some of the moneys in this account belonged to the plaintiff personally or some of it moneys that he received from his trustee account. If he agreed to keep this agency account separate, and to deposit it in that bank separate, it was his duty so to do, and if he mixed any other moneys with it he acted improperly, and until he finally settled with the Patterson heirs they could claim the money and claim the whole of it. In that aspect of the case it is not material to bother much with his trustee account in the Orphans' Court.

In the case at No. 508 January Term 1888, the plaintiff requests the court to charge the jury [inter alia]:

5. That the bank paid out the money in question at its peril and the burden of proof rests upon it to satisfy the jury by clear and satisfactory evidence, not only that the money in question does not belong to the plaintiff, but also that it did belong to the parties to whom the bank paid it.

Answer: Affirmed.[1]

6. That if the jury find that the account in suit was not in fact opened as an account of T. H. Baird Patterson as agent for Joseph N. Patterson, Thos. H. Patterson and Mrs. Hazeltine, but was opened solely for his own purposes and conveniences; and that it included deposits of his individual funds, and funds as trustee under appointment of the Orphans' Court, and the

bank knew that it included such items, then the mere fact that it included rents collected by him for said claimants would not justify the bank in recognizing them as the owners of the balance and paying it over to them.

Answer: Affirmed.[2]

Counsel for defendant respectfully ask the court to charge the jury:

1. That if the jury find that the agency account was opened by plaintiff as the agent of Joseph N. Patterson, Thos. H. Patterson and C. F. and E. H. Hazeltine, in pursuance of an arrangement between plaintiff and his said principals, by which said account was to be used for moneys derived from the agency properties, and the defendant knew this, then defendant had a right to presume that whatever moneys might be deposited in said account by plaintiff belonged to his said principals, and after notification not to pay it to plaintiff by said principals, defendant had no right to do so, and therefore the verdict must be for defendant.

Answer: Affirmed, provided the jury also find that, prior to the date of the check of December 29, 1887, plaintiff had been removed or ceased to be agent, had not settled his account as agent with his principals, and that said check was not for any purpose connected with his said agency.[3]

In the second case, which is for damages for not honoring his check, the plaintiff's counsel requests the court to charge:

1. That if, under the instructions of the court in the case at No. 508 January Term 1888, they find that the plaintiff is entitled to recover the amount there sued for, then the plaintiff in this case is entitled to recover substantial damages.

Answer: Affirmed.[a]

2. That the jury in addition to substantial damages may assess in favor of the plaintiff punitive damages, if they find, under all the circumstances of the case, that the defendant unnecessarily and unreasonably acted in disregard of the rights of the plaintiff and with partiality against him.

Answer: Affirmed.[b]

The defendant's counsel requests the court to charge:

1. That the mere loss of credit by the plaintiff is not a ground for damages, unless it be immediately connected with some tangible pecuniary loss of which it was the cause: Eckel v. Murphey, 15 Pa. 488.

Answer: Refused.[c]

2. There being no evidence of such tangible pecuniary loss in this case, the plaintiff cannot recover.

Answer: Refused.[d]

3. Under all the evidence in the case the verdict of the jury should be for the defendant.

Answer: Refused.[e]

The verdicts of the jury were in favor of the plaintiff, in No. 508, for $1,404.55, and in No. 509, for $300. Motions of the defendant for a new trial were overruled, and judgments were entered on the verdicts, whereupon the defendant took these appeals.

In the appeal at No. 148, the appellant specified that the court erred:

1, 2. In the answers to plaintiff's points.[1] [2]

3. In the answer to defendant's point.[3]

4, 5. In the parts of the charge embraced in [ ][4] [5]

6. In refusing the defendant the closing address to the jury.[6]

7. In submitting the case to the jury.

8.* In admitting the plaintiff's offer.[8]

In the appeal at No. 149, the appellant assigned for error:

1, 2. The answers to plaintiffs' points.[a] [b]

3. The refusal of defendant's points.[c] [d] [e]

4, 5. The parts of the charge embraced in [ ][4] [5]

6. The refusal to the defendant of the closing address to the jury.[6]

*Mr. S. Schoyer, Jr.* (with him *Mr. S. B. Schoyer*), for the appellant:

1. Where one deposits money in a bank as "agent," it prima facie belongs to his principal: Bank of Northern Liberties v. Jones, 42 Pa. 536. The bank has no right to pay it out to the agent, after notice from his principal not to do so: F. & M. N. Bank v. King, 57 Pa. 202; Frazier v. Erie Bank, 8 W. & S. 18; and will be liable if it permits the agent to divert the money

---

* The eighth specification of error did not show an exception taken to the ruling of the court therein complained of, nor the nature of the testimony given in pursuance of the offer which the court admitted.

to purposes not connected with the agency account, in fraud of his principal: 2 Hilliard on Torts, 358, 359; Bodenham v. Hopkins, 13 Eng. L. & E. 222; Bank of Northern Liberties v. Jones, supra. Where money is deposited by one as "agent," and payment is stopped by the principal, the burden is on the agent, in a suit against the bank, to prove that the money belongs to him, and not to his principal: Bank v. Jones, supra; Arnold v. Macungie S. Bank, 71 Pa. 290. Where the agent mixes his own money with that of his principal, the latter has a right to reclaim his own out of the admixture: F. & M. N. Bank v. King, supra.

2. Under the authorities cited, when the plaintiff opened this account as agent, the contract of the bank was, ipso facto, to deal with him in the capacity of agent alone, and not as trustee or in any other capacity. Knowing at the time that he was in fact agent for these very principals, that a large part of the deposits made by him in the account consisted of money which he had collected as agent and which were so designated by him, and that the remainder of the deposits were not made as agent for anybody else, the bank had a right to assume that all money deposited in the account belonged to the parties for whom he was agent, and, after notification from them, it had no right to pay the same to the plaintiff, especially as it knew that the check he drew was for a purpose totally foreign to the agency account.

3. That the plaintiff deposited other than agency money in this account, can make no difference as between him and the bank. It had a right to presume that any such money was deposited to make good some deficiency, and rightfully belonged there. It had nothing to do with the state of accounts between him and his principals, and in the absence of a settlement between them could not say how much belonged to each. It did not matter whether the account was kept in pursuance of a previous arrangement or not. The plaintiff can recover only if, after a settlement with his principals, he can show that he is entitled to this balance. In the second case, it is submitted that the mere loss of credit is not a ground for damages, unless it be connected with some tangible pecuniary loss of which it was the cause: Eckel v. Murphey, 15 Pa. 488; and there is no evidence of this.

*Mr. J. S. Ferguson*, for the appellee:

1. Conceding that in proper circumstances, where one deposits money in bank with the addition of the word " agent " to his name, it belongs, prima facie to his principal, yet when the account, as in this case, does not disclose who the principal is, the deposit does not become prima facie the prey of any one who may choose to lay claim to it.   On grounds of public policy, a bank that has received money from a depositor is estopped from alleging that it belongs to some one else : First N. Bank v. Mason, 95 Pa. 113 ; Citizens N. Bank v. Alexander, 120 Pa. 476. We maintained on the trial, and still think, that the bank, upon receiving the notice from the Patterson heirs, ought to have notified the plaintiff, and if he refused to recognize the claim set up, then, to have interpleaded the parties, and not having done so, no defence was open to it.   But at least the burden was on it to show that its payment was to the proper parties. The case is entirely unlike Bank v. Jones, 42 Pa. 536, and Arnold v. Bank, 71 Pa. 290, cited for the defendant.

2. If, as the jury found, the account was not opened by the plaintiff as agent of the Patterson heirs, but for his own purposes and convenience, these heirs at most could claim no more of the balance than they could show belonged to them.   The bank could not summarily pay over the entire balance, and then say it was justified in so doing because some rents had entered into it.   As all the facts referred to in the proviso to the affirmance of the defendant's point in the first case, were undisputed, the point was to all intents and purposes affirmed unqualifiedly. Every fact mentioned in the part of the charge set out in the fifth assignment was proved by the defendant's own evidence. With regard to the order of the addresses to the jury, it is sufficient to refer to Blume v. Hartman, 115 Pa. 32.   This was a matter in the discretion of the court below.   The offer of evidence, the admission of which is complained of, had a bearing upon the issue as presented by the defendant ; the evidence disproved the theory of the defendant, and further showed that there was no money in the account that in any way belonged to the Patterson heirs.

3. In the second case, the circumstances would have warranted a verdict for exemplary damages.   The action of the bank was a deliberate wanton outrage, but we regard the ver-

dict as simply one for compensation. Substantial damages are recoverable against a banker for dishonoring a check which he has funds to meet: Rollin v. Steward, 14 C. B. 595. The drawer may maintain an action of tort for the refusal of payment, although he has not thereby sustained any actual damages: Marzetti v. Williams, 1 B. & A. 415. It can hardly be possible that a depositor's check can be wrongfully refused payment without some impeachment of his credit, which must be, in fact, an actual injury, though he cannot, from the nature of the case, furnish independent, distinct proof thereof. General damages are recoverable against a banker for dishonoring checks when in funds; proof of special damage is not essential: Birchall v. Third N. Bank, 15 W. N. 174.

## No. 148.

OPINION, MR. CHIEF JUSTICE PAXSON:

The money in controversy was deposited in the defendant bank by the plaintiff, as " agent." There was nothing upon the face of the deposit to show for whom he was agent. In Citizens N. Bank v. Alexander, 120 Pa. 476, the deposit was made by " W. J. Alexander, deputy treasurer," and we held that " the most effect that could be claimed for the words ' deputy treasurer ' was an acknowledgment by Alexander that he held the money for some one else, and, the other person not being designated, as between the bank and Alexander the money belonged to Alexander." This followed directly the ruling in First N. Bank v. Mason, 95 Pa. 113, where it was said: " It is clearly against public policy to permit a bank that has received money from a depositor, credited him therewith upon its books, and thereby entered into an implied contract to honor his check, to allege that the money deposited belonged to some one else. This may be done by an attaching creditor, or by the true owner of the fund, but the bank is estopped by its own act."

In the case in hand, the money was claimed by Joseph N. Patterson and others, who alleged that the plaintiff was their agent; that he had opened this account as " agent," in pursuance of an arrangement or agreement between the plaintiff and themselves; that this arrangement was known to the defendant bank, and that they had given the latter notice not to honor

plaintiff's check.  The existence of this arrangement, and the
true ownership of the money, were among the controverted
questions in the case, and the jury have found them both
against the defendant.  It further appears that the bank not
only refused to honor plaintiff's check, but also paid the money
out to the claimants upon the fund.  It is to be presumed that
it was indemnified for so unusual a proceeding.

A number of errors have been assigned to the charge of the
court, and the answers to points, but they are all without merit.
It requires neither argument nor authority to show that when
a bank refuses the check of its depositor, drawn against funds,
and pays the money over to a third party, it does so at its peril,
and must assume the burden of proof to show "not only that
the money in question did not belong to the plaintiff, but also
that it did belong to the parties to whom the bank paid it:"
See first assignment.  In the answers to points, and the por-
tions of charge embraced in the second, third, fourth, and fifth
assignments, the learned judge fairly submitted to the jury the
question of the ownership of the money.  This certainly was
all the defendant could claim.  The sixth and seventh assign-
ments are void of merit.  The last assignment does not conform
to the rule of court, and will not be discussed further than to
say that by the introduction of the evidence referred to the
plaintiff assumed the burden of showing that the money in
bank did not belong to the parties claiming it, which he need
not have done.

Judgment affirmed.

## No. 149.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case is an outgrowth of Patterson v. Marine N. Bank,
just decided.  When the defendant bank refused to honor the
plaintiff's check, he brought suit against it for such refusal, re-
sulting in a verdict in his favor for $300.  It follows logically,
that if the bank refused to honor plaintiff's check without le-
gal cause, he is entitled to recover damages for such refusal.
The question of the damages is the only one we need refer to.

The learned judge charged the jury in answer to plaintiff's
points, that the plaintiff was entitled to recover substantial
damages, and that they might find punitive damages, " if,

under all the circumstances of the case, the defendant unnecessarily and unreasonably acted in disregard of the rights of the plaintiff, and with partiality against him." On the other hand, the defendant prayed for the instruction "that the mere loss of credit by the plaintiff is not a ground for damages, unless it be immediately connected with some tangible pecuniary loss of which it was the cause;" and Eckel v. Murphey, 15 Pa. 488, was cited in support of this view. The court declined to so charge, and we think very properly.

Eckel v. Murphey has no application. That was a suit brought upon a promissory note, and the defence set up was that it was given in pursuance of a contract for the sale of all plaintiff's red ash coal mined that season at Fremont; that the plaintiff had violated the said contract in not delivering the coal in good order, and had refused to deliver all the coal he had agreed to deliver, by means of which the defendant suffered more damage than the amount of said note. In such case, this court very properly held that "the mere loss of credit by the drawer on account of such failure of performance is not a ground of defence, unless it be immediately connected with some tangible pecuniary loss of which it was the cause." This language was quoted in the defendant's point referred to, and, while it is perfectly good law, it has no application to the case we are considering.

A bank is an institution of a quasi public character. It is chartered by the government for the purpose, inter alia, of holding and safely keeping the moneys of individuals and corporations. It receives such moneys upon an implied contract to pay the depositors' checks upon demand. Individual and corporate business could hardly exist for a day without banking facilities. At the same time, the business of the community would be at the mercy of banks if they could at their pleasure refuse to honor their depositors' checks, and then claim that such action was the mere breach of an ordinary contract for which only nominal damages could be recovered, unless special damages were proved. There is something more than a breach of contract in such cases; there is a question of public policy involved, as was said in First N. Bank v. Mason, 95 Pa. 113; and a breach of the implied contract between the bank and its depositor entitles the latter to recover substantial

damages.   In this case the jury do not appear to have given more ; they evidently did not award punitive damages.

Judgment affirmed.