Josefa Ríos de Noya, Plaintiff and Appellee, *v.* The National City Bank of New York, Defendant and Appellant.

No. 6950. Argued May 22, 1936.—Decided May 5, 1937.

*Fiddler, Córdova & McConnell* for appellant. *R. Cuevas Zequeira* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

On January 31, 1934, the plaintiff, who had a checking account with the defendant bank, drew on the Santurce branch of said bank two checks which read as follows:

"No. 3. Santurce, P. R., January 31, 1934.—The National City Bank of New York, Santurce Branch.—Pay to the order of Porto Rico Railway Co.—$424 100/100 *Cuatro veinte y cuatro* . . . U. S. Dollars.

"(Signed) Josefa Ríos de Noya."

"No. 4. Santurce, P. R., January 31, 1934.—The National City Bank of New York, Santurce Branch.—Pay to the order of Porto Rico Gas & Co.—$256 100/100 *Dos cincuenta y seis* . . . . U. S. Dollars.

"(Signed) Josefa Ríos de Noya."

Both checks were deposited with the Royal Bank of Canada, in San Juan, and presented for payment by it, through the Clearing House, to the National City Bank. On February 10, 1934, the defendant bank returned the checks to the Royal Bank of Canada on the alleged ground that the drawer "lacks sufficient funds."

The plaintiff alleged that on the day when her two checks were returned by the defendant bank, her checking account showed a balance in her favor amounting to $85.86, which was more than sufficient to cover the amount of both checks; that the negligent and unjustifiable act of the defendant bank had caused serious injury to the credit, good name, and reputation of the plaintiff; and she claimed damages in the sum of $10,000.

The defendant denied that the two checks in question had been issued respectively for $4.24 and for $2.56, and alleged that the checks had been so drawn up that they lent themselves to the reasonable interpretation that the amounts for which they had been issued were respectively $424.00 and $256.00; that the defendant so understood it in good faith; and that since the plaintiff did not have sufficient funds to cover said amounts, the bank was bound to return the checks for lack of funds.

The defendant was adjudged to pay $2,000 as damages, together with costs, but without including attorney's fees, and it appealed.

The appellant urges that the lower court erred in not holding that the damages suffered by the plaintiff were due to her own negligence, and that it incurred in manifest error, and acted under the influence of passion, prejudice, and partiality, in weighing the evidence.

 A mere reading of the checks reveals a latent ambiguity or discrepancy between the words and the figures used by the drawer. The words *"Cuatro véinte y cuatro* U. S. Dollars," in the usual and current language of Puerto Rico, do not mean nor are equivalent to $424.00; and the words *"Dos cincuenta y seis* U. S. Dollars" can not be construed to mean the sum of $256.00. According to the current mode of expression in the English language, the phrases "Four twenty four U. S. Dollars" and "Two fifty six U. S. Dollars" could be interpreted to mean $424.00 and $256, respectively, for the practice of suppressing the word "hundred" is quite frequent among English-speaking persons, which does not happen in the Spanish language.

Anticipating that those discrepancies between the words and the figures expressing the amount might occur, the lawmaker has provided the applicable rule which must be followed by the person paying a negotiable instrument upon discovering said discrepancies. Subdivision 1, section 18 of the Uniform Negotiable Instrument Act, approved April 22, 1930 (Session Laws, p. 172) provides:

"Section 18.—Where the language of the instrument is ambiguous or there are omissions therein, the following rules of construction apply:

"1.—Where the sum payable is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount;"

In accordance with the rule established by the above-transcribed provision, it was the duty of the defendant bank, upon discovering that the maker lacked sufficient funds to cover the sums of $424.00 and $256.00, expressed in figures, to resort to the words used by the drawer to express the amount of each check. Did the defendant bank comply with this obligation? Let us examine the evidence.

Miguel Angel Polanco, a bookkeeper and witness for the defendant, testified that he received the two checks through

the "Clearing" from the Royal Bank of Canada; thàt he saw that the checks read "$424" and "$256" respectively. He then examined the balance and upon seeing that there were not sufficient funds, he returned the checks on that account; that the checks presented through the Clearing House are accompanied by a slip wherein the checks and their respective amounts are listed; that he did not look at the note in order to determine the amount of plaintiff's check, because it is not necessary to look at it in order to endorse the check. And in answer to questions asked by the attorney for the plaintiff, he stated:

"Q. Witness, what does that check say in words?

"A. It says four twenty-four.

"Q. And what does four twenty-four mean?

"A. Four dollars and twenty-four cents.

"Q. And if the check you now have in your hands is for four dollars and twenty-four cents, why did you mark it as if the funds were insufficient?

"A. I told you that upon looking at the figures it read $424.00.

"Q. Why did you not look at the amount written in words?

"A. Well, it was because of the amount of work we had that day at the bank, as there were inspectors from New York, the checks from the Clearing House came a little late; we were hurrying in order to pay the checks and, upon looking at the amount and the figures, I returned the check."

He testified similarly concerning the check for $2.56 and then went on to say that it is the custom of the bank, when there is a discrepancy between the figures and the words, to return the check to the bank that presented it for payment, with a notation on the attached slip that "the amounts do not agree"; that in this case he did not do so because of the amount of work they had; that on the same day that the checks were returned to the Royal Bank of Canada, the latter issued debit notes for each of the two checks, for $4.24 and $2.56, respectively. And upon re-direct examination by the attorney for the bank, the witness reaffirmed his interpretation of amounts expressed in words, thus:

"Q. I again show you plaintiff's exhibit No. 1. In the amount written in words, do you say it reads four twenty-four dollars?

"A. Yes, sir.

"Q. Will you please tell me what do you understand by four twenty-four dollars?

"A. Four dollars, twenty-four.

"Q. You would not have any doubt concerning any chek offered here reading 424 dollars, as to whether they were 424 dollars.

"A. It says four hundred to me.

"Attorney: That is all, Your Honor."

In our opinion, the evidence clearly establishes the negligence of the defendant as the proximate cause of the damage caused to the plaintiff. She issued two checks to pay her accounts, one for $4.24 for electricity, and another for $2.56 for gas. The companies in whose favor the checks were issued accepted them in payment of their respective accounts, and for that same amount they deposited the checks for collection. The Royal Bank presented the checks for payment to the drawee bank, through the Clearing House, in order to collect $4.24 and $2.56. The employee in charge of ascertaining whether the person that issued the aforesaid checks had sufficient funds to pay the amount expressed in figures could have avoided the damage by merely looking at the amount expressed in words, which would doubtless have been interpreted by him in the same way when the checks were shown to him at the trial. And if after said examination he still had any doubt as to the intention of the drawer, he could have cleared it by examining the slip attached by the Clearing House, where the exact amount for which both checks were presented for payment was set forth. Lastly, if upon noticing the discrepancy one employee of the bank felt he had no authority to pay the checks, he could have avoided the damage to the plaintiff by requesting her to clear up the doubt, or by returning the checks to the bank that presented them for payment, notifying it, in accordance with the custom of the defendant bank, that the amounts did not agree. The defendant's employee did nothing of the sort.

The fact that the plaintiff, through mistake, carelessness, or negligence, issued the checks in the manner in which they were presented does not relieve the drawee bank from liability if in the exercise of due care and diligence it could have avoided the damage but failed to do so. The evidence introduced in this case clearly shows that the employees of the defendant bank were negligent in returning the plaintiff's checks for lack of sufficient funds, without first resorting to the means at their disposal that would have explained the obvious discrepancy existing between the words and the figures in both checks.

The relationship of a bank and its customers having open accounts (*clientes correntistas*) is of a contractual nature. Upon accepting a deposit subject to the check, the bank contracts the obligation to honor and pay upon presentation the checks issued by the depositor up to the limit of the balance existing in his favor in the bank books. Failure to do so renders the bank liable therefor. *Third National Bank* v. *Ober,* 178 Fed. 678; *Atlanta National Bank* v. *Davis,* 96 Georgia 334, 51 A.S.R. 139; *Patterson* v. *Marine National Bank,* 130 Pa. 419, 18 Atl. 632; *Stevens* v. *Market Street Title & T. Co.,* 65 Pa. Super. 288, 4 A.L.R. 955; and *Woody* v. *National Bank,* 194 N. C. 549, 140 S. E. 150.

Noncompliance with that obligation was due to the negligence and carelessness of the employees of the defendant bank, and the latter must repair the damage done to its client.

From the evidence introduced it appears that the defendant bank, upon noticing the error committed by one of its employees, did everything it could to mitigate as far as possible the prejudice that the plaintiff might suffer, by notifying the Royal Bank of Canada and the companies in whose favor the checks had been drawn, and explaining to them the whole incident.

We are not convinced that the credit and good name of the plaintiff have been seriously affected, and we are of opinion that the sum of $2,000 awarded by the lower court is excessive.

For the reasons stated the judgment appealed from is modified by reducing to $250 the amount of damages that the defendant must pay to the plaintiff, and as so modified, the judgment is affirmed.

Mr. Justice Wolf dissented, as he was of opinion that the judgment should be reversed and the complaint dismissed.

Mr. Justice Córdova Dávila took no part in the decision of this case.