Protasio Maymí Martínez, Plaintiff and Appellee, *v.* Banco Popular de Puerto Rico, Defendant and Appellant.

No. 8719.   Argued February 3, 1944.—Decided May 2, 1944.

*Damián Monserrat, Jr., Gabriel de la Haba,* and *Rafael Baragaño, Jr.,* for appellant.   *Hipólito Marcano* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The lower court sustained a complaint in an action for damages and adjudged the defendant bank to pay to the plaintiff the amount of $200 with costs.   The facts are as follows:

Protasio Maymí Martínez issued a check on February 12, 1942, to the order of the Colón Grocery (*Colmado Colón*) for the amount of $1.10 on his open account in the defendant bank.   Said check was endorsed by Esther Ortiz, plaintiff's wife, and by Antonio Colón, owner of the Colón Grocery, and delivered to the firm of Narciso Ortega, *S. en C.,* which deposited it in its open account in the defendant bank. Although the plaintiff had sufficient. funds to cover the

amount of said check, the defendant bank refused to cash it and returned it to Narciso Ortega, *S. en C.*, attaching a slip with a notation that the check drawn by *Francisco González Bouillerce* to the order of Colón Grocery against the defendant was returned on the following ground: *"Lacks Sufficient Funds,"* which slip was initialed by two employees of the defendant. The firm of Ortega then returned the check to Colón and the latter, in turn, to the plaintiff.

Besides the preceding facts it was proved in the lower court that the plaintiff was a professional accountant, a graduate of the University of Puerto Rico; that he has filled several public offices in the Insular Government and has been employed since July 1942 as Inspector of Accounts in the State Insurance Fund; that he was appointed to fill said office after the incident of the check had occurred.

In its opinion the lower court expressly stated:

"It does not appear from the evidence that the integrity, credit, reputation, or good name of the plaintiff have been injuriously affected by the return of the check in question by the defendant bank. It does appear, however, that the employees of said bank acted negligently in returning plaintiff's check for lack of sufficient funds."

Notwithstanding this, the court sustained the complaint because "It was the duty of the defendant bank to pay plaintiff's check and noncompliance with that obligation renders the bank liable therefor. *Ríos* v. *National City Bank*, 51 P. R.R. 473," and adjudged the defendant to pay to the plaintiff the sum of $200 with costs.

The appellant attempts to show in its brief that the lower court erred "in erroneously construing the allegations set up in its answer . . ." and "in dismissing the demurrer for insufficiency," because even though the defendant admitted the endorsement of the check yet it never admitted that it was *"duly endorsed"* and that this was the real ground for having dishonored the check. Nevertheless, it was proved that the check was returned, not on the ground that it was

improperly endorsed, but on the ground that the drawer lacked sufficient funds. This is the claim on which the action for damages is based. It is the false claim of lack of funds imputed against the solvency of a depositor. If the defendant had returned the check for wrongful endorsement, the cause of action alleged in this case would not have arisen. Since the defendant set forth its reason for returning the check, now a different claim can not be alleged to defend the action. See the case of *Macrum* v. *Security Trust & Savings Co.*, 221 Ala. 419, 129 So. 74, where it was held that a bank refusing to cash a check because a commercial establishment lacks sufficient funds, can not later question the authority of the manager of the depositor to draw checks, and further stated: . . . "If the officers of the bank had doubt of the authority of plaintiff to draw the check the refusal to pay should have been placed on that ground, and not on the claim that there were no sufficient funds; and in that event a different question would exist."

In the seventh averment of the complaint it is alleged that the check was endorsed by the owner of Colón Grocery (*Colmado Colón*), Mr. Antonio Colón, and this allegation was admitted in the answer. It is true that the defendant denied in its answer that the check had been returned to the plaintiff on the ground that he did not have sufficient funds and on the contrary alleged that it refused to pay the check "for the sole reason that it did not have the first endorsement and it was thus communicated to Messrs. Narciso Ortega, S. en C. attaching thereto a printed slip with said notice." However, these allegations of the defendant were destitute of proof. If the defendant had proven those facts plaintiff's contention would have been destroyed and most probably the lower court would have rendered a different decision. The case of *Eichner* v. *Bowery Bank of New York*, 48 N.Y.S. 978, cited among others by the appellant, is not applicable herein since the court expressly stated in its opinion that "There

was no allegation in the complaint that the check was ever indorsed by the payees either before or at the time or times it was presented to the bank for payment''.

The real important question to be decided in this appeal is whether despite the fact that it was not proved, as was held by the lower court in weighing the evidence, that ''the integrity, credit, reputation or good name of the plaintiff had been injuriously affected by returning the check in question to the defendant bank,'' the defendant could have been adjudged to pay compensation to the plaintiff. Our only decision invoked by the trial judge in support of its judgment is the case of *Ríos* v. *National City Bank, supra.*

In said case the defendant bank, through negligence of its employees, also returned two checks to the plaintiff without cashing them on the false ground of lack of sufficient funds, and it was held therein that ''The relationship between a bank and its customers having open accounts is of a contractual nature'' and that ''Upon accepting a deposit subject to check, the bank contracts the obligation to honor and pay upon presentation the checks issued by the depositor up to the limit of the balance existing in his favor in the bank books. Failure to do so renders the bank liable therefor.'' To buttress this conclusion the following cases were cited: ''*Third National Bank* v. *Ober,* 178 Fed. 678; *Atlanta National Bank* v. *Davis,* 96 Georgia 334, 51 A.S.R. 139; *Patterson* v. *Marine National Bank,* 130 Pa. 419, 18 Atl. 632; *Stevens* v. *Market Street Title & T. Co.,* 65 Pa. Super. Ct. 288, 4 A.L.R. 955; and *Woody* v. *National Bank,* 194 N. C. 549, 140 S. E. 150.'' The opinion ends by saying:

''Noncompliance with that obligation was due to the negligence and carelessness of the employees of the defendant bank, *and the latter must repair the damage done to its client.*

''From the evidence introduced it appears that the defendant bank, upon noticing the error committed by one of its employees, did everything it could to mitigate as far as possible the prejudice

that the plaintiff might suffer, by notifying the Royal Bank of Canada and the companies in whose favor the checks had been drawn, and explaining to them the whole incident.

"We are not convinced that the credit and good name of the plaintiff have been seriously affected, and we are of opinin that the sum of 2,000 awarded by the lower court is excessive." (Italics ours.)

And for that reason compensation was reduced to $250.

We have examined the record in the *Ríos* case and we are convinced that the conclusion reached as to the amount for damages was based on the ground that the plaintiff *proved* that her credit and good name had been affected although not so seriously as to justify the amount awarded by the trial court. We say this because an examination of the decisions cited in said case could lead to the conclusion that we had expressly decided the question raised in the case at bar, that is, that even in the absence of proof of the injury sustained by the plaintiff, the defendant bank should always be adjuged to pay, relying on the theory existing in several States of the Union to the effect that in a case of this nature a presumption arises that the plaintiff has been caused some damage. It seems to us that the decisions invoked in the *Ríos* case were in support of the contractual relationship existing between the parties. Let us now pass to the scope of said decisions.

In some of the American jurisdictions the underlying principle is that if the depositor is a trader damages are presumed, since the wrongful dishonoring of his check must necessarily affect his credit. In other jurisdictions it is maintained that if the depositor is a nontrader, damages are not presumed and the plaintiff is bound to prove them, while still in other jurisdictions the distinction between traders and nontraders has been eliminated on the ground that in modern business conditions financial transactions carried out by both are based upon credit and that the damages must be presumed in all the cases. Undoubtedly,

the lower court applied the above-mentioned theory, for it confined itself to citing in its opinion the annotations appearing in 126 A.L.R. 206, and in 7 Am. Jur. 392 *et seq.,* which deal in detail with the different aspects involved in this question. An example of the reasoning used to support the liability of a bank, even in the absence of proof of damages, where the plaintiff is a nontrader, is found in the case of *Valley National Bank* v. *Witter,* 121 P. (2d) 414, 418, wherein the Supreme Court of Arizona stated the following:

"Upon a general examination of the cases which distinguish between the trader and the non-trader, and their reasoning it is apparent that the rule was based upon the theory, true enough when the rule was first laid down, that the injury was to the ability of the depositor to obtain further financial credit in his dealings with others; that practically all of the business of a merchant or trader was based upon credit rather than cash transactions, and that any attack upon his financial character was necessarily bound to diminish his ability to obtain further credit and thus injure his business. On the other hand, the non-trader seldom had a bank account, conducted most of his dealings for cash, and only required credit in isolated and special instances, so that there was no reason to presume that a failure to pay one of his checks, in the rare istances where he did possess a bank account, would affect a credit which presumably was not used or did not exist. *The situation, however, has greatly changed in recent years. The vast majority of all modern financial transactions, whether carried on by traders or non-traders, are based upon credit.* A large percentage of our population conduct even their household accounts on a monthly credit basis, usually paying by checks on their own bank accounts, and the dishonoring of one of those checks would presumably affect their credit, even though it was not as great in dollars and cents, just as seriously in proportion to the extent of their transcations with those who knew of the dishonor, as would the dishonoring of the check of a great merchant. In both cases, under modern business conditions, we think the presumption from the mere fact of dishonor is that the credit of the depositor was injuriously affected." (Italics ours.)

As we have stated, the decisions in the United States are divided in such a way that it can not be asserted which of

the principles above set forth prevails. Some of the states probably realizing the financial consequences which a bank might suffer as a result of actions of this kind, have enacted statutes limiting its liability to nominal damages only, in the absence of proof of specific damages sustained by the plaintiff, in those cases where it is alleged and proved that the bank has acted maliciously. Statutes of this nature exist in Alabama (*First National Bank of Mobile* v. *Ducros,* 168 So. 704); Arkansas (*State Bank* v. *Marshall,* 260 S. W. 431); California (*Allen* v. *Bank of America, etc.,* 136 P. (2d) 345); Missouri (*Wagner* v. *Bank of Bernie,* 281 S. W. 130); North Carolina (*Thomas* v. *American Trust Co.,* 182 S. W. 136; *Woody* v. *National Bank of Rocky Mount,* 140 S. E. 150).

For a lengthy discussion on the different theories existing in the United States, see Michie, Banks and Banking, chap. 9, §242 *et seq.* and the annotations in 4 A.L.R. 947 and 126 A.L.R. 206.

Should we adopt in Puerto Rico any one of these theories? The general rule is that in actions for damages the defendant is only liable for the damages really caused and that, therefore, the plaintiff is in all cases bound. to prove them pursuant to §§1054 and 1802 of the Civil Code, which provide as follows:

"Section 1054.—Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

"Section 1802.—A person who by an act or comission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

However, as an exception to the general rule dealing with proof of damages, this court has held since the year 1910 in an action for damages for libel, *Quiñones* v. *J. T. Silva Banking & Commercial Co.,* 16 P.R.R. 661, 702, that "When the right is defamatory *per se,* and there is no

privilege in favor of the defendant this is sufficient for the plaintiff to entitle him to recover at least nominal damages *without proving the same in any specific manner."* (Italics ours.) We followed this doctrine citing many authorities in *Rivera* v. *Martínez,* 26 P.R.R. 692, and in other subsequent cases, the most recent one being *Méndez* v. *Kraidman, ante,* p. 270. The same doctrine was approved by the Supreme Court of the Philippines in *Guevara* v. *Almario,* 56 Phil. Rep. 476.

Morse, in his work Banks and Banking, 6th ed., p. 1007, §458, cited with approval in the case of *Valley National Bank* v. *Witter, supra,* maintains that actions as in the case at bar resemble cases of libel and slander, stating:

" . . . It can hardly be possible that a customer's check can be wrongfully refused payment without some impeachment of his credit, which must in fact be an actual injury, *though he can not from the nature of the case furnish independent distinct proof thereof. It is as in cases of libel and slander, which description of suit, indeed, it closely resembles, inasmuch as it is a practical slur upon the plaintiff's credit and repute in the business world.* Special damage may be shown, if the plaintiff be able; but, if he be not able, the jury may nevertheless give such temporary damages as they conceive to be a reasonable compensation for that indefinite mischief which such an act must be assumed to have inflicted, according to the ordinary course of human events . . . "(Italics ours.)

Not only the textwriters, but also the decisions hold that these actions are by their nature similar to those of libel and slander. Thus, in the case *Macrum* v. *Security Trust & Savings Co., supra,* it was held that "The authorities generally sustain the view that the wrongful refusal to honor a check is a very effectual way of slandering the depositor in his trade, and that this character of case is akin to and comes within the category of slander suits (citing authorties)."

"The distinction is sometimes said to be that a slander, properly considered, is where defamatory words are used, whereas this nature

of tort is in effect defamation by acts. *James Co.* v. *Con. Nat. Bank,* 105 Tenn. 1, 58 S.W. 261, 51 L.R.A. (N.S.) 255, 80 Am. St. Rep. 857.

"The act of the banker in refusing to honor the check is said to impute insolvency or bad faith to the drawer of the check, and has the effect of slandering the merchant or trader in his business (citing authorities)."

The same doctrine has been applied to cases where the drawer was a nontrader. Thus in the case of *Spearing* v. *Whitney Central National Bank,* 56 So. 548, the Supreme Court of Louisiana applying §2315 of its Civil Code, equivalent to §1802 of our Code, stated as follows:

"All the common-law authorities agree that *nominal* damages may be recovered *in every case* of neglect or refusal to pay the check of a depositor where he had sufficient funds on deposit in the bank to meet the check.

"In the leading case of *Rolin* v. *Steward,* 14 C. B. 595, an action for damages for the wrongful dishonor of a check was likened to 'an action for slander of a person in the way of his trade'. (The case of *James Co., supra,* is cited herein to show the analogy between the two actions). Such wrongful dishonor is just as efficient in imputing dishonesty or insolvency to *the customer* as if either had been charged against him by word of mouth. In the case at bar, the action is founded on quasi slander, without intentional wrong, and is governed by the rule that:

"'Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. C.C. 2315.'" (Italics and parenthetical ours.)

Although it sustained the resemblance between the two classes of actions, the Supreme Court of Louisiana, which in actions for libel and slander *per se* accepts the exception to the rule dealing with proof of damages (see citation in *Rivera* v. *Martínez, supra*), rejected the same in the case above cited and maintained that, since the plaintiff is a nontrader, he may only recover such damages as are alleged and proved. Really we do not see the logical reason in sustaining a difference between traders and nontraders. While it is true that in the case of a trader his credit as such might be affected more seriously than that of an individual, yet, as to

the humiliation and disgrace in general it seems to us that both are equally affected. We must not overlook the fact that in Puerto Rico it is an offense to draw a check, with the intention of defrauding, without having sufficient funds to cover the same. Act No. 26 of April 26, 1934 (Laws of 1934, p. 278). Even though the plaintiff has been unable to prove special damages, yet we think that the court could grant the reasonable compensation which it awarded. The mere fact that his check was dishonored and returned, without cause, to the firm N. Ortega, *S. en C.,* and by the latter to the Colón Grocery with a written note stating that he had not sufficient funds, affected plaintiff's good name among those persons who intervened in the matter. And in the case of *Woody* v. *National Bank, supra,* wherein the plaintiff was a non-trader, the following was said, quoting from Morse:

" . . . . But the better authority seems to be that, even if such actual loss or injury its not shown, yet more than nominal damages shall be given. It can hardly be possible that a customer's check can be wrongfully refused payment without some impeachment of his credit, which must in fact be an actual injury, though he cannot from the nature of the case furnish independent, distinct proof thereof. It is as in cases of libel and slander, which description of suit, indeed, it closely resembles, inasmuch as it is a practical slur upon the plaintiff's credit and repute in the business world. Special damages may be shown, if the plaintiff is able; but if he be not able, the jury may, nevertheless, give such temperate damages as they conceive to be a reasonable compensation for that indefinite mischief which such an act must be assumed to have inflicted, according to the ordinary course of human events."

We think that the compensation of $200 awarded by the trial court to the plaintiff is a reasonable compensation under the attendant circumstances herein.

The judgment appealed from must be affirmed.