## Feasterville Motors, Inc. v. Provident National Bank

*Daniel E. Bacine*, for plaintiff.
*Walter Weir, Jr.*, for defendant.

SAVITT, *J.*, February 9, 1979—This case comes before the court upon defendant Provident National Bank's motion for summary judgment on all three counts of plaintiff Feasterville Motors, Inc.'s amended complaint.

In Count I of its amended complaint, plaintiff charges that defendant wrongfully paid out the funds under the name of Feasterville Motors, Inc. (hereafter Feasterville) to one Bharat D. Bhakta (hereafter Bhakta), who had been authorized by corporate resolution to draw on said account, thereby breaching the implied contract between a bank and its depositor.

In Count II, plaintiff alleges the same facts, but claims that the acts of Provident National Bank (hereafter Provident) set forth a cause of action for "conversion," or more generally, in trespass.

In Count III, plaintiff alleges that, having paid over the funds in the account to Bhakta, Provident thereupon wrongfully dishonored checks drawn on the account by Feasterville.

For the reasons stated in this opinion, Provident's motion is denied as to Counts I and III, but granted as to Count II.

On a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party: Davis v. Pennzoil Co., 438 Pa. 194, 264 A. 2d 597 (1970). Viewing the record in the light most favorable to Feasterville, the facts are these:

In 1975, one Largent, president of Feasterville, and Bhakta entered into an oral agreement which provided that Bhakta was to purchase a certain number of automobiles from time to time to be resold by Feasterville. Bhakta would be paid 50 percent from the resale. Bhakta was also allowed to buy and sell cars, at wholesale, under Feasterville's name, and retain all profits derived from the resale.

Pursuant to this agreement, on June 17, 1976, Feasterville authorized Bhakta, in a corporate resolution of undisputed validity, to open an account under the name of Feasterville. The corporate resolution provided that only Bhakta (or his wife) could draw on the account. On July 27, 1977, two days after Feasterville was served with a Federal subpoena for turning back odometers on automobiles sold under its name, this corporate resolution was revoked and a new corporate resolution was presented to an officer of Provident.

That night, the change was recorded as a "referral" on Provident's computers. This procedure is designed to alert any employe of the bank about any special situation or problem which may exist with the account.

On July 28, 1977, five minutes prior to the regular opening time, an officer of Provident allowed Bhakta to close out the account. At the time of the transaction, the "referral" was noted on the signature card, as well as the notation by the bank officer that the account had been closed. This was done

pursuant to a discussion held on the night of July 27 between Bhakta and one Loftus, an officer of Provident.

At the time he closed out the account, Bhakta did not dispute (or apparently even know of) the new corporate resolution. Rather, he simply asked for the funds.

According to the president of Feasterville, the funds in the Feasterville account belonged to Feasterville, being composed of moneys constituting advances of Bhakta to Feasterville, although the president contradicted this account later in his deposition.[1]

Provident's motion for summary judgment as to Count I must be denied for two reasons. First, it does not matter that Largent's deposition at times appears contradictory. Which version of the nature of the account is correct is an issue for the fact finder to decide, not for the court: Davis, supra. Certainly this court cannot say that this case is clear and free from doubt. Id. See also Schaffer v. Larzelere, 410 Pa. 402, 189 A. 2d 267 (1963).

Secondly, under the facts, Provident was prohibited from paying out the funds to Bhakta.

Although both parties have briefed the court extensively on the meaning of First National Bank of Lock Haven v. Mason, 95 Pa. 113 (1880), and its progeny, plaintiff's Count I must stand or fall on its coming within the provisions of the Banking Code

---

1. Because the disposition of Provident's motion is determined solely by the facts as set forth above, there is no need for the court to consider the undisputed facts about Bhakta's involvement with the account, as set forth by defendant. Those facts, however relevant to the dispute between Bhakta and Feasterville, are simply immaterial to this action.

of November 30, 1965, P.L. 847, 7 P.S. §606, which provides in relevant part:

"(a) An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account or property held in safe-deposit (whether by the institution or in a safe-deposit box or other receptacle leased to a customer) made by a person or persons other than: (i) The customer in whose name the account or property is held by the institution, or (ii) An individual or group of individuals who are authorized to draw on or control the account or property pursuant to a certified corporate resolution or other written arrangement with the customer, currently on file with the institution, which: (A) Has not been revoked by valid corporate action in the case of a corporation, or by a valid agreement or other valid action appropriate for the form of legal organization of any other customer, of which the institution has received notice, and (B) Is not the subject of a dispute known to the institution as to its original validity."

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit: 1 Pa.C.S.A. §1921(b); Scherer Liquor License Case, 199 Pa. Superior Ct. 49, 184 A. 2d 502 (1962); Labor Relations Board v. Teamsters Union Local No. 77, 20 Pa. Commonwealth Ct. 410, 342 A. 2d 158 (1975); however, when there are ambiguities, the court must ascertain the intent of the legislature: 1 Pa.C.S.A. §1921(c); Com. v. Monumental Properties, Inc., 459 Pa. 450, 329 A. 2d 812 (1974). In the statute here involved, ambiguities appear.

In ascertaining the intent of the legislature, the following may be considered:

"(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar objects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute." 1 Pa.C.S.A. §1921(c); Com. Higher Education Assistance Agency v. Abington Memorial Hospital, 478 Pa. 514, 387 A. 2d 440 (1978).

The official comment to 7 P.S. §606 sets forth as follows:

"Section 905 of the prior Code [7 P.S. §819-905] was clear enough where X claimed the account of Y, whether Y was an individual, partnership or corporation. It was not as clear where the deposit was in the name of a partnership, corporation or other entity and a dispute arose as to which individuals or group of individuals were authorized to control the account on behalf of the named depositor. This section 606 is intended to remove any doubt as to *the requirement of a court order or indemnity to support a claim of authority* with respect to an account in the name of a corporation or other entity if the claim is at variance with the current arrangement on file with the institution.

"Under the language of subsection (a)(ii) the institution will not have to recognize, for example,

any authorized signer for a corporate account who is not designated in the corporate resolution or other evidence of authority, such as a power of attorney, on file with the institution prior to a dispute among factions in the corporation. If one faction supplies a purported revocation of the resolution on file but another faction disputes the validity of the revocation, the institution will be entitled to continue to rely on the last resolution received in regular form and without any known dispute as to the validity of its original adoption, in the absence of a court order or indemnity bond.

"The timing of the notices to the institution governs the application of this section. The institution would *be required*, for example, to recognize the authorized signers under a corporate resolution on file until it receives notice of revocation of it. If that notice is accompanied by a new resolution it would then *be required* to recognize the authorized signers under the second resolution. If it then received notice of a dispute as to the second resolution, it would *be required* at that point to recognize only the authorized signers under the first, undisputed resolution."[2] (Emphasis supplied.)

Under either (a)(i) or (a)(ii) of this statute, the conclusion is the same. As to (a)(ii), the validity of Feasterville's first authorization was never disputed; however, it was revoked by the resolution of July 27, 1977. By placing the "referral" on its computers, if not before, Provident must be charged with notice of the second resolution. Bhakta, when he withdrew the funds, did not dispute the validity of the second resolution.

---

2. Use of comments by the Banking Law Commission to construe this statute is sanctioned specifically by 7 P.S. §104(a), and generally by 1 Pa.C.S.A. §1939.

As to (a)(i), Feasterville and not Bhakta was the titular depositor. Asking for the funds cannot be held to be any sort of "dispute" as to the validity of the resolution. Such a holding would effectively nullify the statute, a result to be avoided. See 1 Pa.C.S.A. §1921.

Under the circumstances, Provident was required to recognize Feasterville and not Bhakta as the depositor entitled to the funds in the account, unless Bhakta obtained a court order otherwise, or indemnified Provident. This was not done.

Reference to the predecessor statute, 7 P.S. §819-905, and the cases arising thereunder: Del Conte v. Luca, 2 D. & C. 2d 130 (1954); Romig v. West Milton State Bank, 26 D. & C. 41 (1936), and particularly Kassow v. Integrity Trust Co., 19 D. & C. 159 (1933); requires the same conclusion.

That, in enacting the present statute, the legislature did not intend to change this construction is clear from the comment, which stated that the earlier provision "was clear enough where X claimed the account of Y, whether Y was an individual, partnership or corporation." See page 6, supra.

Further, to support its motion for summary judgment, Provident relies on Patterson v. Marine National Bank, 130 Pa. 419, 18 Atl. 632 (1889), in which the Supreme Court declared:

"It requires neither argument nor authority to show that when a bank refuses the check of its depositor, drawn against funds, and pays the money over to a third party, it does so at its peril, and must assume the burden of proof to show 'not only that the money in question did not belong to the plaintiff, but also that it did belong to the parties to whom the bank paid it.'" 130 Pa. at 432, 18 Atl. at 632.

It is true that "statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." Com. v. Miller, 469 Pa. 24, 27, 364 A. 2d 886 (1976); however, former 7 P.S. §819-705 was unequivocal as to the change which its provisions wrought upon the common law. The present 7 P.S. §606 is, if anything, a stronger such declaration.

Moreover, within the context of the Patterson case, it is clear that the Supreme Court viewed the bank's actions with disfavor. The court said: "It further appears that the bank not only refused to honor plaintiff's check, but also paid the money out to the claimants upon the fund. It is to be presumed that it was indemnified for so unusual a proceeding." 130 Pa. at 432, 18 Atl. at 632. Simply put, what the present statute and its predecessor have done is to require that indemnification. Therefore, Provident's reliance on Patterson is outdated and misplaced.

Public policies in this matter likewise require the conclusion which this court reaches: Cf. 1 Pa.C.S.A. §1921. Such policies were described by 10 Am. Jur. 2d Banks, §506, 474-75 (1963), which noted that statutes of this nature were passed both to protect the banks against double liability and to protect depositors from diversion or dissipation of their funds: See First National Bank of Lock Haven, supra, 95 Pa. at 118.[3]

---

3. It is possible that a double liability might exist in this case. Nonetheless, where a party deliberately removes itself from the protections of a statute safeguarding it from double liability, as Provident has done here if plaintiff's case is proven under the facts as set forth at the beginning of this opinion, it cannot be heard to complain of that liability.

Plaintiff is therefore entitled to go to trial and attempt to prove the facts as set forth above which would make out a meritorious case.

The holding of this court as to Count I necessarily forecloses Provident's motion as to Count III. Since Provident was required to recognize Feasterville as the owner of the funds in the account, and 7 P.S. §606 was never complied with, Provident was required, under the facts as set forth above, to honor the checks presented to it by Feasterville. Accordingly, defendant's motion for summary judgment as to Count III is also denied.

Count II of plaintiff's amended complaint alleges that "[d]efendant converted the funds in [plaintiff's] account for defendant's own purposes. In its response to defendant's motion for summary judgment, plaintiff acknowledges that the term 'conversion' might be inappropriate, but insists that the bank has misappropriate[d] its depositor's funds."

This court's disposition of this motion as to Counts I and III mandates that the motion be granted as to Count II. To grant Feasterville a cause of action for trespass upon the same set of facts which call into operation the provisions of 7 P.S. §606 would not be appropriate. 1 Pa.C.S.A. §1504 provides that statutory remedies and duties displace *existing* common law, and this court will therefore not recognize a *new* action at common law.[4]

---

4. It is similarly instructive that Pennsylvania's Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §4113, has never been applied to the debtor-creditor relationship, such as exists between a bank and its depositor: In re Prudential Trust Co.'s Assignment, 223 Pa. 409, 72 Atl. 798 (1909); Thomas v. First National Bank, 376 Pa. 181, 101 A. 2d 910 (1954). Further, in a number of cases the courts have emphasized that

Defendant Provident's motion for summary judgment as to Count II of plaintiff's amended complaint is therefore granted.

For the reasons set forth in this opinion, the court issues the following

## ORDER

And now, February 9, 1979, upon consideration of the motion for summary judgment filed by defendant, Provident National Bank, and the response of plaintiff, Feasterville Motors, Inc., thereto, defendant Provident National Bank's motion for summary judgment is hereby denied as to Counts I and III of plaintiff's amended complaint, and granted as to Count II of plaintiff's amended complaint.

conversion cannot occur where title has already passed to the party allegedly "converting" the funds: Com. v. Overheim, 106 Pa. Superior Ct. 424, 162 Atl. 475 (1932). Specifically, it has been held on several occasions that the prior fraudulent conversion statute had no application to the debtor-creditor relationship, and is not intended to be an independent action for the collection of a debt: Pearl Assurance Co. v. National Insurance Agency, 151 Pa. Superior Ct. 146, 30 A. 2d 333 (1943); Com. v. Hillpot, 84 Pa. Superior Ct. 454 (1925); Com. v. Heit, 19 Berks 89 (1926).