## COMMERCIAL NAT. BANK v. LATHAM.

No. 689.   Opinion Filed January 10, 1911.

Rehearing Denied June 19, 1911.

(116 Pac. 197.)

**BANKS AND BANKING**—Refusal to Honor Draft—Damages.   Where in a suit in damages by L. against a bank for dishonoring her draft, there being at the time sufficient of her funds on deposit there to pay it, but which the bank after receiving for payment, acting oppressively and of bad faith, caused to be impounded as the property of another, the release and payment of which was at an expense to plaintiff of $69, held, that she was entitled to recover substantial damages, and, as the court had instructed for no more and the jury had not found punitive damages nor acted through passion or prejudice, a verdict for plaintiff for $1,069 will not be set aside as excessive.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Action by Haidee W. Latham against the Commercial National Bank. Judgment for plaintiff, and defendant brings error. Affirmed.

*Harris & Wilson,* for plaintiff in error.

*Flynn, Ames & Chambers,* for defendant in error.

TURNER, J.   This is a suit in damages brought by Mrs. Haidee W. Latham, defendant in error, as plaintiff, in the dis-

trict court of Oklahoma county, against the Commercial National Bank, plaintiff in error, for wrongfully refusing to pay her draft drawn against her own funds on deposit in said bank. There was trial to a jury and verdict and judgment for plaintiff for $1,069, and defendant brings the case here.

It is assigned for error that the judgment is excessive and unsupported by the evidence. There is no material conflict in the testimony. The evidence discloses that from August 29 to November 15, 1904, the plaintiff, Mrs. Latham, was a resident of Oklahoma City, and had on deposit in the defendant bank at the end of that time .$670.30; that she and her husband, P. Latham, Jr., were personally known to its officers; that on July 25, 1905, she was a resident of Memphis, Tenn., from whence through the First National Bank of that city she drew a sight draft upon defendant for the amount of her said deposit. and attached thereto her passbook; that at the time defendant received the draft it had a foreclosure suit pending in the district court of that county wherein G. W. Garrison and A. F. Latham were parties defendant; that therein said Garrison at the instance of defendant, which acted oppressively and in bad faith, knowing. the same to be false, filed an answer and cross-petition, alleging that said A. F. Latham was the husband of plaintiff, who as such had said money so deposited in fraud of his creditors, and caused plaintiff's said deposit to be impounded by process of said court; that thereupon defendant refused to honor said draft, and returned the same to the Memphis bank, assigning as the reason therefor said impounding of the fund; that thereupon plaintiff's husband at an expense of $69 visited the defendant bank, and secured a release of the money, and the same was paid to plaintiff.

Defendant in support of its assignment contends that as no special damage was pleaded, and no evidence adduced tending to prove that such there was, outside of the fact that plaintiff testified, "Q. Now, Mrs. Latham, were you at all disturbed by the fact that this draft was not paid? A. Certainly I was. I was so mortified I did not know what to do"—the verdict of the

jury was "unsupported by the evidence and unwarranted by the facts." We cannot concur. Applying the law to this state of facts, the court instructed the jury:

"If your verdict is for the plaintiff, the measure of her damages is, first, the repayment to her of whatever sum was necessarily expended in the matter of collecting the money on deposit to her credit in the bank, and such other and further sum as will fairly and reasonably compensate her for any injury to her credit and standing and for any worry, humiliation, and injury to her feelings by reason of the failure of the defendant bank to honor the draft for her said deposit, not, however, to exceed the sum prayed for in her petition, $5,069."

Which, whether correct or not, being unexcepted to, must stand. As plaintiff was entitled to recover substantial damages and the jury was not otherwise instructed or so far as we can see gave more or punitive damages, we cannot say from all the facts that the amount of the verdict was so large as to evidence passion or prejudice on the part of the jury.

*Patterson v. Marine Bank,* 130 Pa. 419, 18 Atl. 632, 17 Am. St. Rep. 778, was a suit of similar nature to the one at bar. There the bank did not, as here, act oppressively and in bad faith, but in good faith, in refusing to honor plaintiff's check. There was judgment for plaintiff for $300 damages. On appeal the Supreme Court said:

"A bank is an institution of a quasi public character. It is chartered by the government for the purpose, *inter alia,* of holding and safely keeping the moneys of individuals and corporations. It receives such moneys upon an implied contract to pay the depositor's checks upon demand. Individual and corporate business could hardly exist for a day without banking facilities. At the same time, the business of the community would be at the mercy of banks if they could at their pleasure refuse to honor their depositors' checks, and then claim that such action was the mere breach of an ordinary contract for which only nominal damages could be recovered, unless special damage were proved. There is something more than a breach of contract in such cases. There is a question of public policy involved. as was said in *First Nat. Bank v. Mason,* 95 Pa. 113 [40 Am. Rep. 632]; and a breach of the implied contract between the bank and its depositor entitles the latter to recover substantial dam-

ages. In this case the jury do not appear to have given more. They evidently did not award punitive damages."

—And affirmed the judgment of the trial court.

In *Schaffner v. Ehrman,* 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 134, 32 Am. St. Rep. 192, appellants, who were bankers, had on deposit the money of appellees, who were retail liquor dealers in Chicago. By a mistake of the bank's bookkeeper their deposit was shown to be less than it was, owing to which fact the bank refused to pay one of appellees' checks drawn against it. As soon as the mistake was discovered, the bank did all in its power to rectify it, but appellees withdrew their account. On the return of all their checks, it was discovered that payment of two other checks drawn by them had also been refused for want of funds, but, upon being presented the second time, were paid, they having in the meantime made deposits sufficient to pay them. Appellees then brought suit against appellants to recover damages alleged to have been sustained by refusing to pay said checks. There was trial to the court and judgment for $450 and costs, which was affirmed by the Appellate Court. On the trial appellants requested the court to hold the law to be that, to entitle plaintiffs to recover more than nominal damages, they must prove that they had sustained actual or substantial damages, or that defendants had acted with malice and that the law would not presume, without proof of special damage, that by the dishonoring of the checks plaintiffs sustained special or substantial damages. The request was refused. This on appeal the Supreme Court held no error, and said:

" * * * What is the measure of a banker's liability to a person engaged in trade for a refusal to pay his check, he having sufficient funds on deposit for that purpose, in the absence of evidence of malice or special injury to the depositor? Authorities are not numerous on the question, but they seem to be uniformly to the effect that more than mere nominal damages are in such cases recoverable. The leading case is that of *Rolin v. Steward,* 14 C. B. 595. In that case there was no evidence of malice in fact, nor of special damages; but the jury were told that they ought not to confine their verdict to nominal damages, but should give the plaintiffs such temperate damages as they

should judge to be a reasonable compensation for the injury they must have sustained from the dishonoring of their checks. And the jury accordingly, by their verdict, gave substantial damages, on which judgment was rendered by the trial court. On appeal all the judges concurred in holding that the direction of the jury was correct. * * * ''

And, after holding that as appellants acted without just cause or excuse in the premises, malice in law might be inferred, although there might have been no intention to injure the appellees, the court concluded that the verdict was not excessive under all the circumstances of the case. From the editor's notes to that case, published in 15 L. R. A. 43, we learn that in *Birchall v. Third National Bank*, 15 Wkly. Notes Cas. (Pa.) 174, which is not before us, $600 damages was allowed in an action for protesting a check for $68 when there were funds in the bank to pay it, and that in the Rolin case a verdict of 500 pounds was sustained when reduced to 200 pounds. From all of which we hold that the verdict of the jury was not excessive nor influenced by passion or prejudice.

The affirmative defense of the bank that plaintiff's deposit was a special one, and made subject to certain rules and regulations of defendant printed on the passbook requiring, among other things, that 60 days' notice be given before withdrawing it, and that such depositor must identify himself to the satisfaction of the bank, all of which plaintiff failed to do, will not be considered for the reason that defendant, having in its letter to the drawer bank placed its reason for dishonoring the check on grounds other than a failure of plaintiff to comply with said rules, was estopped to rely thereon; the issue on said estoppel being duly joined and correctly found by the jury for plaintiff on the trial of the cause. This is in keeping with the familiar rule laid down in *Railroad Co. v. McCarthy*, 96 U. S. 258, 24 L. Ed. 693, thus:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to amend his hold."

See, also, *Morrison et al. v. Atkinson et al.*, 16 Okla. 571, 85 Pac. 472.

Under this view of the case, it perhaps was irrelevant and immaterial, as objected by defendant, to prove by an officer of the bank its custom of honoring drafts on a time deposit, but the error, if any, was immaterial.

While defendant and Garrison might have been making common cause to realize the full amount of A. J. Latham's mortgage to Garrison which as collateral to Garrison's debt to the bank it was seeking to foreclose, we can see no confidential communication in the information conveyed by·the attorneys separately employed by the bank to the attorneys separately employed by Garrison, to the effect that plaintiff was the wife of said Latham, a stranger and a single man, which induced Garrison to impound plaintiff's deposit as security for any deficiency that might arise on the foreclosure of said collateral, and for that reason we cannot say the court erred in admitting such communication in evidence.

There is nothing in the remaining assignment of error.

The judgment of the trial court is affirmed.

All the Justices concur.