FIRST WYOMING BANK, N. A., SHER-
IDAN, Appellant (Defendant),

v.

FIRST NATIONAL BANK, a Wyoming
Corporation organized and doing busi-
ness under the provisions of the Nation-
al Bank Act, Buffalo, Wyoming, Appel-
lee (Plaintiff).

No. 5248.

Supreme Court of Wyoming.

June 11, 1980.

Michael K. Shoumaker of Badley, Ras-
mussen & Shoumaker, P. C., Sheridan, for
appellant.

Terrence L. O'Brien of Omohundro &
O'Brien, Buffalo, for appellee.

Before RAPER, C. J., and McCLIN-
TOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Robert L. Barker, June Barker and Dar-
ryl Barker were joint owners of a passbook
savings account at appellant-defendant
bank. Darryl Barker obtained a $10,000.00
loan from appellee-plaintiff bank and as-
signed the savings account as partial securi-
ty for the loan. At the time the loan was
made, Mr. Holt, one of appellee's employ-
ees, telephoned Mr. Spielman, one of appel-
lant's employees, and verified the existence
of the savings account and that it had a
balance of $4,181.90. Holt also advised
Spielman that the loan was being made and
that the savings account was being assigned
to appellee. Holt also sent a letter to Spiel-
man in which he advised that the savings
account was being accepted as partial col-
lateral on a loan and requested that with-

drawals not be permitted from the savings account unless appellee authorized otherwise in writing. Holt gave a copy of the assignment to a secretary to be enclosed with the letter, but he testified that it was possible that it was not enclosed. Spielman testified that the assignment was not received, and his reply letter suggested that Holt "secure said savings account in writing from Mr. Darryl L. Barker" if he had not already done so. Spielman also advised in the reply letter that "a hold" had been placed on the savings account, but that "[w]e do not, however, guarantee or hereby accept any liability for said savings account."

When Darryl Barker defaulted on the loan, appellee demanded the funds from the savings account from appellant. However, the balance in the savings account was $469.96 inasmuch as Robert L. Barker had withdrawn monies from it on two occasions. The $469.96 was paid to appellee, but appellee brought this action against appellant for $3,711.94 (the difference between the amount in the savings account at the time of the loan and the $469.96 received from it). Appellee contended that appellant had sufficient notice of the assignment and had improperly allowed withdrawals to be made from the account by Robert L. Barker.

Appellant appeals from a judgment in favor of appellee which was entered after a trial to the court. We reverse.

Wyoming's "bank protection statute" provides in pertinent part:

"(b) Any portion of a deposit by two (2) or more persons payable to either or any depositor, or to the survivor of the depositors, and interest or dividends thereon, may be paid in accordance with the contract of deposit. *The receipt of the payment* by the person paid *is a valid and*

*sufficient release and discharged* [sic] *to the bank for any payment made."* (Emphasis supplied.) Section 13–3–601, W.S. 1977.

■ The contract of deposit was not made a part of the record in this case, but there seems to be no question but that the savings account was "jointly" owned.[1]

"* * * [T]he general rule is that an assignee of a non-negotiable chose in action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter." 6 Am.Jur.2d Assignments § 102 (1963). See *Pioneer Investment Corporation v. Kassler & Company*, Wyo., 408 P.2d 803, 804 (1965).

Could Darryl Barker prevent Robert L. Barker from making the withdrawals from the savings account by directing appellant to place a "hold" on the account? If he could not, appellee could not, since it acquired no greater rights than Darryl Barker could assign. The parties argue whether or not there is an affinity between an assignment such as this and a stop payment order. Appellee claims that there is and points to provisions of Article 4—Bank Deposits and Collections—of the Uniform Commercial Code to support such claim. Specifically, it points to §§ 34–21–404(a)(v) and 34–21–472(a), W.S.1977, which read respectively:

"(a) In this article unless the context otherwise requires:

"(v) 'Customer' means any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank;"

and

"(a) A customer may by order to his bank stop payment of any item payable for his

1. Appellee first learned that the savings account was jointly owned on the morning of the trial. Because of the late knowledge, the court offered a continuance, but appellee refused, commenting, "I don't know that the continuance is going to change anything, so we might as well go ahead." Appellee argues on appeal that it was error to receive evidence relative to the joint ownership of the account since it was not alleged as an affirmative defense in the pleadings. Not only does this argument improperly allege an error not made subject of a cross appeal, but the appellee waived the right to predicate errors on this point by refusing the continuance offered by the court. Appellee intentionally relinquished a known right. *Ranger Insurance Company v. Cates*, Wyo., 501 P.2d 1255 (1972); *Matter of Estate of Boyd*, Wyo., 606 P.2d 1243 (1980); 28 Am.Jur.2d Estoppel and Waiver § 166 (1966).

account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 4–303 [§ 34–21–452]."

Appellee argues that it became a customer of appellant by virtue of the assignment of Darryl Barker's interest in the savings account, and that, as a customer, it could stop payment of monies from that account—even to the joint owner thereof. This argument can be bolstered by noting that § 34–21–404(a)(i), W.S. 1977 defines an "account" to include a savings account; that § 34–21–404(a)(vii), W.S. 1977 defines "item" as "any instrument for the payment of money even though it is not negotiable but does not include money"; and that a savings account withdrawal order has been held to be an "item" under the Uniform Commercial Code. *Coleman v. Brotherhood State Bank*, 3 Kan.App.2d 162, 592 P.2d 103 (1979); *Joler v. Depositors Trust Company*, Me., 309 A.2d 871 (1973). Applying these definitions and holdings to the language of § 34–21–472(a), it would seem that appellee could stop payment of funds from the savings account to Robert L. Barker by means of giving proper notice of the assignment to appellant.

 We need not here determine that precise question,[2] since even if the notice of the assignment was completely adequate and even if the provisions of § 34–21–472(a) were applicable and appellee could stop payment of the withdrawal order of Robert L. Barker, the stop payment order would not have been in effect at the time Robert L. Barker made the withdrawals. Section 34–21–472(b), W.S. 1977 states with reference to the stop payment order referred to in § 34–21–472(a) that:

"(b) An oral order is binding upon the bank only for fourteen (14) calendar days unless confirmed in writing within that period. A written order is effective for only six (6) months unless renewed in writing."

The loan was made in August of 1977 and the telephone conversations and correspondence between Holt and Spielman occurred in the same month. The withdrawals by Robert L. Barker were made well after six months subsequent to that date.

We do not find merit in appellee's contention that appellant was estopped by the correspondence and telephone calls between Holt and Spielman from denying an obligation to prevent withdrawals from the savings account. In fact, estoppel *might be* effective the other way. Appellee failed to ascertain the joint nature of the account at the time of the loan. Appellee failed to recognize from the comment in appellant's letter to the effect that the savings account should be "secured" by a "writing" from Darryl Barker, that appellant did not have a copy of the assignment. Appellee did not react to appellant's disclaimer of "liability" for the savings account. Appellee did not take possession of the account by executing on the assignment and transferring the savings account monies to another account as specifically authorized in the assignment.

"Generally speaking, so far as the party claiming an equitable estoppel is concerned, one of the essential elements of the estoppel is that such party shall have lacked knowledge and the means of knowledge of the truth as to the facts in question. * * *" 28 Am.Jur.2d Estoppel and Waiver § 80 (1966).

" ' * * * [A]s a corollary to the proposition that the party setting up an estoppel must have acted in reliance on the conduct or representations of the party sought to be estopped, the former * * must not only have been destitute of knowledge of the real facts as to the matter in controversy, but must have also been without convenient or ready means of acquiring such knowledge. One relying on an estoppel must have exercised

2. The meaning of "payment" in § 34–21–472(a), W.S. 1977 could be interpreted, along with the application of the words "unless the context otherwise requires" in § 34–21–404(a), W.S. 1977 to the indicated terms used in § 34–21–472(a), as applying only to third parties and not to the owner or owners of the account.

such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require.' * * * " *McCarthy v. Union Pac. Ry. Co.,* 58 Wyo. 308, 323, 131 P.2d 326, 330 (1942), quoting from 31 C.J.S. Estoppel § 71, p. 270. See *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670 (1935), rehearing denied 49 Wyo. 296, 54 P.2d 814 (1936).

Inasmuch as appellee acquired only the rights held by Darryl Barker for the savings account, and inasmuch as appellant is relieved of liability for payments made to a joint depositor by the bank protection statute (§ 13–3–601, W.S.1977), appellee must look to other than appellant to satisfy Darryl Barker's obligation.

Reversed.