Charles R. SHAW, Appellant,

v.

**UNION BANK AND TRUST
COMPANY, Appellee.**

No. 53271.

Supreme Court of Oklahoma.

Nov. 10, 1981.

As Corrected Nov. 16, 1981.

George M. Ablah, Oklahoma City, for appellant.

Robert H. Alexander, Jr., Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellees.

SIMMS, Justice:

Charles R. Shaw appeals from an order of the Small Claims Division, Oklahoma County, granting judgment in the amount of $56.26 against Union Bank and Trust Company (appellee).

Appellant, a joint tenant in a savings account, checking account, and safety deposit box with Emma B. Nauman, who died May 9, 1978, took possession of the safety deposit box and checking account funds soon after Nauman's death. When appellant requested the remaining funds in the savings account, the bank informed him of the necessity of obtaining a release from the Oklahoma Tax Commission.

Upon notification of the tax release, on or about May 31, 1978, appellant presented a savings withdrawal form which the bank accepted. The bank made out a cashier's check but refused to deliver it. Appellee bank then refused to release funds without a probate of Emma B. Nauman's estate. Appellant hired an attorney for probate proceedings, though they proved unnecessary since Nauman's estate was worth less than $1,000.

On June 30, 1978, appellee bank released the savings account funds on which interest had accrued at the rate of 5% per annum. Appellant deposited the funds at another bank for a return of 7.65%.

Appellant's petition alleged that the following damages were suffered because of appellee's actions:

(1) Loss of interest of $56.26;

(2) The cost of an unnecessary probate proceeding ($1000);

(3) Mental pain and suffering resulting from bank's alleged wrongful dishonor ($25,000);

(4) Exemplary damages ($125,000).

Appellee filed a motion to strike and the district court sustained the motion, thereby removing all alleged damages except the loss of interest ($56.26). The district court ordered the case transferred to the Small Claims Division where judgment was entered for appellant for $56.26.[1]

At issue are the types of damages potentially recoverable when a bank wrongfully withholds a depositor's funds.

Appellant urges that the Uniform Commercial Code (UCC) 12A, O.S.1971, § 4–402, states the measure of damages available:

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether an con-

sequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

Appellee, on the other hand, contends the damage issue is resolved not by the UCC but by 23 O.S.1971, § 22:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

Appellee asserts the action is merely a contractual one.

In weighing the merits of these arguments, we must consider the following questions: (1) Whether a savings withdrawal order constitutes the wrongful dishonor of an item under UCC § 4–402; (2) Whether a wrongful dishonor is an action in tort, an action in contract, or a new cause of action.

I.

■■■ 12A, O.S.1971, § 4–104 defines item as follows:

" 'Item' means any instrument for the payment of money even though it is not negotiable but does not include money."

We agree with appellant's contention that under § 4–402, a savings withdrawal order is an item. Though most commonly thought of as personal checks, an item can include bank checks, cashier's (tellers checks), notes, and non-negotiable instruments payable at the bank. *White and Summers, Handbook of the Law Under the U.C.C., § 17–4; Dziurak v. Chase Manhattan Bank, N.Y., 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978); 20 U.C.C.Rep. 427.*

*Coleman v. The Brotherhood State Bank, Kan.App., 3 Kan.App.2d 162, 592 P.2d 103 (1979)* considered a savings withdrawal order an item under § 4–402, as did *First Wyoming Bank, Etc. v. First National Bank, Wyo., 612 P.2d 469 (1980); and Joler v. Depositors Trust Co., 13 U.C.C.Rep. 515,*

1. Summary transfer from the District Court to the Small Claims Division has not been raised

and therefore is not an issue. 12 O.S.1971, § 1757.

*Me., 309 A.2d 871 (1973)*. The Oklahoma Code Comment to § 4–104 makes it clear that item is not restricted to checks:

"(2) The definition of 'item' is similar to former 6 Okl.St.Ann. § 118, except that the Commercial Code added the words 'even though not negotiable' to make certain that the rules of this Article apply to all instruments usually handled by banks in the collection channels."

## II.

More problematic than whether a savings withdrawal order qualifies as an item under the UCC is the question of how to categorize wrongful dishonor. The UCC refuses to relegate wrongful dishonor either to an action in tort or to an action on contract.

"The liability of the drawee for dishonor has sometimes been stated as one for breach of contract, sometimes as for negligence or other breach of a tort duty, and sometimes as for defamation. *This action does not attempt to specify a theory.* 'Wrongful dishonor' excludes any permitted or justified dishonor, as where the drawer has no credit extended by the drawee, or where the draft lacks a necessary endorsement or is not properly presented." U.C.C. Comment, 12A, § 4–402(2). [E.A.]

"Wrongful dishonor is different from 'failure to exercise ordinary care in handling an item,' and the measure of damages is that stated in this section, not that stated in Section 4–103(5)." U.C.C. Comment, 12A, § 4–402(4).

Appellee rests its case largely on the contention that the savings withdrawal was not an item. Applying this logic, if there is no item, there is no wrongful dishonor and appellee is liable merely for the breach of an obligation to pay money, i.e., the amount due plus interest. We must disagree. Even in the pre-Code *Commercial National Bank v. Latham, Okl., 29 Okl. 88, 116 P. 197 (1911)*, a similar fact situation in which payor bank wrongfully refused to pay

plaintiff's draft drawn against her own funds, the court distinguished a bank's responsibility from an ordinary breach of an obligation to pay money.

"... the business of the community would be at the mercy of banks if they could at their pleasure refuse to honor their depositor's checks, and then claim that such action was the mere breach of an ordinary contract for which only nominal damages could be recovered, unless special damages were proved. *There is something more than a breach of contract in such cases.* There is a question of public policy involved ... and a breach of the implied contract between the bank and its depositor entitles the latter to recover substantial damages." [E.A.] p. 198, citing *Patterson v. Marine Bank, 130 Pa. 419, 18 A. 632, 17 Am.St.Rep. 778.*

Appellee's maxim "A proper analysis of the instant case begins and ends in the realm of contract law" does not conform with the UCC's interpretation of wrongful dishonor as a hybrid cause of action. The U.C.C. Commentary & Law Digest Cum. Supp.1980, § 4–402(A)(2), points out that § 4–402 does not answer the issue of whether wrongful dishonor is grounded on the contract between bank and depositor, on the bank's obligation to administer the depositor's account with due care, or on the law's prohibition of the slandering of another's credit.

"It simply creates a cause of action and eschews any inquiry into the theory behind that cause of action. So be it. The problem this creates is that the extent of the damages recoverable is normally a function of the cause of action asserted."

*White and Summers, supra,* postulate that because the UCC does not specify whether wrongful dishonor sounds in tort or contract, the draftsmen intended to allow recovery for mental distress and other intangible injury as consequential damages.[2]

---

2. In *Northshore Bank v. James T. Palmer, Tex., 525 S.W.2d 718 (1975)* the trial court instructed the jury that mental anguish suffered by the depositor was an element of consequential damages resulting from wrongful dishonor.

■ The cases appellee cites to argue for the restriction of the action in contract are not convincing. These cases stand for the general rule that the relationship between a bank and depositor is contractual. That general rule does not apply to the special situation of wrongful dishonor. For example, *Sebring v. Federal Deposit Ins. Corp., Okl., 401 P.2d 479 (1963)* deals with the breach of an obligation to pay money only. The facts involve a failed state bank and the duty of the court to order the bank to pay interest to depositors, not the bank's failure to honor a depositor's item. *Sebring* holds that the issue of interest is controlled by 23 O.S.1971, § 22, supra, but the case in no way intimates that the wrongful dishonor of an item is a mere breach of an obligation to pay money only.

Under § 4–402 a bank is liable for damages *proximately caused* by the wrongful dishonor of an item. In other words, § 4–402 gears the measure of damages not to the face value of the dishonored item, but to the injury sustained by the depositor. U.C.C. Digest, 1980 Cum.Supp., § 4–402(A)(5). Where the wrongful dishonor is attributable to mistake, the U.C.C. limits recovery to actual damages proved.[3]

On any restriction of damages when the dishonor is grounded on an action other than mistake, § 4–402 is silent.[4] In *Joler, supra,* the executor of a deceased depositor's estate attempted to close out decedent's savings and checking account at defendant bank. Because decedent owed money, the bank insisted on written assurance the debt would be paid before releasing the funds in the savings account.

The Court held that where sufficient funds remained in decedent's checking account to cover the debt, the refusal to pay the executor constituted wrongful dishonor. Defendant was liable, not only for the balance of the accounts, but for consequential damages proximately caused by the wrongful conduct.

As to the possibility of awarding punitive damages, § 4–402 neither expressly allows nor disallows them. Appellee states correctly that generally punitive damages are not recoverable for the breach of an obligation arising from contract. 23 O.S.1971, § 9. Wrongful dishonor, as defined by the U.C.C. is more than a mere breach of contract. *Loucks v. Albuquerque National Bank, 76 N.M. 735, 3 U.D.C.Rep. 709, 418 P.2d 191 (1966),* holds that punitive damages are allowable when the conduct of the bank is "maliciously intentional, fraudulent, oppressive, or committed recklessly, or with a wanton disregard of the depositor's rights." *Northshore Bank v. Palmer, Tex. Civ.App., 525 S.W.2d 718, 17 U.C.C.Rep. 488 (1975)* interpreted the U.C.C. as allowing punitive recovery if reasonably related to actual damages. Punitive damages were not allowed in *Wallick v. First State Bank of Farmington, Mo., 532 S.W.2d 520 (1976),* but the court stated they would be appropriate if the breach amounted to an independent wilful tort, with proper allegations of malice.

The Oklahoma Code Comment to § 4–402, citing *Latham,* implies punitives are recoverable:

> "This section expresses prevailing common law. A bank is liable for damages

This view has been codified in § 4–402.

---

The trial court in *Commercial National Bank v. Latham, supra,* instructed the jury as follows:

> "If your verdict is for the plaintiff, the measure of her damages is first, the repayment to her of whatever sum was necessarily expended in the matter of collecting the money on deposit to her credit in the bank, and such other and further sum as will fairly and reasonably compensate her for any injury to her credit and standing and for any worry, humiliation, and injury to her feelings by reason of the failure of the defendant bank to honor the draft for her said deposit..."

**3.** Because of the difficulty of proving that an injury was "proximately caused" by a wrongful dishonor, the law formerly allowed damages without proof under "the trader's rule". The customer, especially a commercial depositor, was *presumed* to be injured. U.C.C.Digest, 1980 Cum.Supp., § 4–402(A)(5).

**4.** See, U.C.C. Commentary and Law Digest, § 4–402(A); U.C.C.Digest, 1980 Cum.Supp. § 4–402(A)(2), and 18 ALR 3d 1376 § 10.

caused by a wrongful dishonor, *but punitive damages cannot be awarded for dishonor caused by mistake.*"

Appellant here alleges in his petition that appellee bank "acted in a wrongful, malicious, and grossly negligent manner in refusing to release the funds." Appellant should be given the opportunity to prove these allegations.

Therefore, we hold the trial court erred in sustaining defendant's motion to strike the allegations of consequential and punitive damages allowable under U.C.C. § 4–402 in plaintiff's petition. We set aside the order of the trial court and judgment of the Small Claims Division, and remand to the District Court for trial on the merits.

IRWIN, C. J., BARNES, V. C. J., and HODGES, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurring in part, dissenting in part.

OPALA, Justice, concurring in part and dissenting in part:

The case presents but two questions: (a) Does a depositor have a tort claim against his banker for wrongful refusal to honor an order for withdrawal of funds on deposit? And if so, then (b) What elements of damage are recoverable?

The depositor's appeal is from a judgment that confined his recovery to lost interest and denied his plea for other damages alleged to have been occasioned by the harmful event. While I concur in the court's view that an *ex delicto* action does

lie, I cannot accede to its exposition of the depositor's recovery limits.

The surviving joint tenant in a savings account [depositor] sought to recover damages from the bank's wrongful refusal to honor his withdrawal order. The petition unmistakably declares upon a single cause of action in tort. It alleges that because the deposit in suit had been cleared for release by the state tax authority, its withholding by the bank constituted a "wilful, wrongful, malicious and grossly negligent" act.

I

A depositor's remedy against the bank for wrongful refusal to honor his order of payment is not just a breach of a contract, express or implied, that the bank will pay to the depositor, or his order, any amount that does not exceed the balance on deposit.[1] As institutions of "quasi public character" banks are engaged in a calling that places them under a common-law duty to exercise care in obeying their customers' mandates.[2] The banker/depositor relationship embodies two distinct clusters of obligations. Its consensual origin gives rise to a contract, express or implied, which in turn creates a creditor/debtor bond.[3] The law itself additionally affixes to it yet another attribute— that of status. In the Anglo-American legal tradition a banker's wrongful refusal to honor a customer's order for withdrawal of deposited funds is *both* a breach of contract and a tortious breach of a status-based duty of care. The depositor may elect between an action *ex contractu* and one *ex delicto*.[4] If the former be chosen, recovery is limited to the amount of the dishonored order wrongly disobeyed, with interest from the

1. *Commercial Bank v. Latham*, 29 Okl. 88, 116 P. 197, 198 (1911); *Valley Nat. Bank v. Witter*, 58 Ariz. 491, 121 P.2d 414, 418 (1942).

2. *Commercial Nat. Bank v. Latham*, supra note 1; *Patterson v. Marine Bank*, 130 Pa. 419, 18 A. 632, 633 (1889); *Marzetti v. Williams*, 1 Barn. & Adol. 415, 109 Eng.Rep. 842 (1830); *Rolin v. Steward*, 14 C.B. 595, 139 Eng.Rep. 245 (1854).

3. *Brown v. Eastman National Bank of Newkirk*, Okl. 291 P2d 828, 830 (1955), 55 ALR2d 971.

4. The status approach to the banker's tort liability may have its antecedents in the early English law which regarded merchants and money-lenders as occupying "a special status" in the legal order of the day. Graveson, Status in the Common Law 31 (University of London The Athelone Press 1953); Holden, the History of Negotiable Instruments in the English Law 205, 227 (University of London The Athelone Press 1955).

date of demand and refusal.[5] Should the latter remedy be pursued, the composition of compensable reparation may be entirely different.[6]

The adoption of the Uniform Commercial Code [Code or UCC] in 1961[7] had *no* effect on the range of remedies available under the common-law norms of liability to the depositor wronged by the bank's dishonor. Nor did the Code abridge his freedom to choose among the various delictual theories of liability—negligence, slander (of credit), conversion or other wilful and malicious harm. With respect to the depositor's remedies and to his theories of recovery, the pre-Code body of Oklahoma precedent remains unaffected and continues in force.[8]

The depositor's petition clearly and unmistakably rests his claim on a "wilful, malicious or grossly negligent" tort. The allegations are sufficient to state an *ex delicto* cause of action against the bank. There was hence error in striking from the petition all of the tort-related items of recovery.

## II

Pre-Code Oklahoma case law distinguishes between two types of actions for delictual dishonor. One of these is for the bank's refusal to pay on depositor's demand when the order is in the hands of a third-party payee or holder; the other action is for dishonor of the depositor's direct withdrawal order. In the former class the law recognizes that impeachment of the customer's credit may follow as a natural consequence of wrongful dishonor; it hence allows recovery—in a manner akin to that in

slander—for mental pain and suffering, embarrassment, humiliation, mortification, worry or other injury to the feelings from harm to one's reputation which was inflicted wilfully or with malice.[9] In contrast to tort actions with an element of slander, the past course taken by this court with respect to the legal loss for a depositor's injury from the actionable dishonor of his own withdrawal order *confines* his damages to those elements which are statutorily authorized in litigation for conversion.[10] If the criteria of 23 O.S.1971 § 9 are met, a depositor may in the latter type action *additionally* recover punitive damages.[11]

I would leave undisturbed all those of the depositor's alleged items of damages which are applicable, under the terms of 23 O.S. 1971 § 64, to conversion actions, as well as those for punitive damages, but would strike from his petition all references to "mental pain and suffering". This is so because his claim against the bank for actionable dishonor of his own withdrawal order cannot be rested on a theory akin to slander.

---

5. *First Nat. Bank v. Stockton*, 117 Okl. 120, 245 P. 638, 640 (1926); *Valley Nat. Bank v. Witter*, supra note 1.

6. *Commercial Bank v. Latham*, supra note 1.

7. 12A O.S.1971 §§ 1–101 et seq.

8. The comment following 12A O.S.1971 § 4–402, which deals with the measure of damages for wrongful dishonor by a "payor bank", expressly notes that the Code "does not attempt to specify a theory" of liability.

9. *Commercial Nat. Bank v. Latham*, supra note 1; *Valley Nat. Bank v. Witter*, supra note 1;

see cases collected in the Annotation of liability of bank to depositor for dishonoring check in 126 ALR 206, 218–219.

10. 23 O.S.1971 § 64; *First Nat. Bank v. Stockton*, supra note 5; see also, *McKinnon v. Monarch Loan Co.*, 111 Okl. 213, 239 P. 170, 172 (1925); *Watson v. Stockton Morris Plan Co.*, 34 Cal.App.2d 393, 93 P.2d 855, 862 (Cal.App. 1939) and 86 P.2d 927, 935 (Cal.App.1939).

11. *Fuller v. Neundorf*, Okl., 293 P.2d 317, 320 (1956).